Harold **OSTROSKY**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. A–206.

Court of Appeals of Alaska.

Aug. 2, 1985.

---

788

Susan Orlansky, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

This case raises the question of the extent to which a defendant can rely on mistake of law as a defense to a fish and game violation.

Harold Ostrosky and his two daughters were convicted of fishing without a valid limited entry permit in 1979. Ostrosky's daughters moved for post-conviction relief, contending that the Limited Entry Act violated equal protection. Judge Victor D. Carlson found the act unconstitutional and vacated the convictions on August 14, 1981. Ostrosky was allowed to join in the action, and his conviction was set aside on August 25, 1981. The state appealed. This court certified the case to the supreme court, and the supreme court accepted the case for decision.

On July 3, 1983, Ostrosky was fishing with a drift gill net in open waters off Naknek. Trooper Gary Folger, acting as a fish and wildlife protection officer, boarded Ostrosky's boat and checked it for fish. Despite Ostrosky's admission that he had no permit, the trooper did not arrest Ostrosky or try to stop him from fishing.

On July 7, 1983, while the state's appeal in Ostrosky's earlier case was still pending, the state filed an emergency request with the supreme court for a stay of the effect of Judge Carlson's ruling in that case, pursuant to Appellate Rule 504. The request alleged that "irreparable harm" would result if the stay were not granted, because Ostrosky had continued to fish the waters

of Bristol Bay without a permit, creating a "serious potential for violence" in the area and "undermining the fishermen's confidence in the limited entry system." An affidavit from an assistant attorney general was attached in support of these charges. The request ended with this statement: "A stay of the Memorandum Decision is necessary to accord the Division of Fish and Wildlife Protection the necessary authority to arrest Mr. Ostrosky for violation of [the Limited Entry Act]." Chief Justice Edmond Burke, acting as a single justice, entered an order granting the stay pending the announcement by the supreme court of a decision in Ostrosky's case. The order states, "the intent of this order is to permit the continued enforcement of the Limited Entry Act pending this court's decision on the merits." On July 8, 1983, Trooper Folger cited Ostrosky for fishing without a permit on that date, for fishing without permit on July 3, and for illegal possession of salmon.

On July 19, 1983, the Alaska Supreme Court reversed Judge Carlson's ruling and upheld the Limited Entry Act. *State v. Ostrosky*, 667 P.2d 1184 (Alaska 1983), *appeal dismissed*, —— U.S. ——, 104 S.Ct. 2379, 81 L.Ed.2d 339, *reh'g denied*, —— U.S. ——, 104 S.Ct. 3572, 82 L.Ed.2d 871 (1984). After the supreme court's decision, Ostrosky filed a motion to dismiss in the present case alleging that, at the time he was charged with violating the Limited Entry Act, the Act had been declared unconstitutional in a case in which he was a party. Ostrosky argued that he was entitled to rely on Judge Carlson's ruling. Judge Carlson ruled that Ostrosky had no right to rely on his earlier decision and that by fishing, Ostrosky had taken the risk that the earlier decision would be reversed by the supreme court.

Ostrosky then asked the court to instruct the jury that reasonable reliance on a judicial decision was a defense to this prosecution. Judge Carlson denied this request. He also ruled that Ostrosky could not present testimony concerning reasonable reliance on a judicial decision since that testimony would be irrelevant. Ostrosky at this point made an offer of proof that he would testify that at the time he was fishing he believed that he was fishing legally. He represented that he relied on Judge Carlson's decision declaring the Limited Entry Act unconstitutional and that he had read an article in the *Fisherman's Journal* which reported that a magistrate in Kenai had also ruled that the Limited Entry Act was unconstitutional. He also indicated that after Judge Carlson's ruling declaring the Limited Entry Act to be unconstitutional, Ostrosky had talked to his attorney who had assured him that he would not be arrested for fishing without a permit during the 1983 season.

After Judge Carlson ruled Ostrosky's defense of mistake of law was irrelevant and that he would not give a jury instruction on this defense, Ostrosky agreed to a court trial on the condition that his objection to this ruling would be preserved for appeal. Ostrosky was convicted following a court trial. He now appeals to this court.

The defense of reasonable reliance on a statute or judicial decision is discussed in W. LaFave and A. Scott, *Criminal Law* § 47, at 366–67 (1972):

An individual should be able reasonably to rely upon a statute or other enactment under which his conduct would not be criminal, so that he need not fear conviction if subsequent to his conduct the statute is declared invalid. A contrary rule would be inconsistent with the sound policy that the community is to be encouraged to act in compliance with legislation. Thus, just as it is no defense that the defendant mistakenly believed the statute under which he was prosecuted to be unconstitutional, it is a defense that he reasonably relied upon a statute permitting his conduct though it turned out to be an unconstitutional enactment.

For essentially the same reason, the better view is that it is a defense that the defendant acted in reasonable reliance upon a judicial decision, opinion or judgment later determined to be invalid or

erroneous. The clearest case is that in which the defendant's reliance was upon a decision of the highest court of the jurisdiction, later overruled, whether the first decision involved the constitutionality of a statute, the interpretation of a statute, or the meaning of the common law. A contrary rule, whereby the subsequent holding would apply retroactively to the defendant's detriment, would be as unfair as ex post facto legislation.

Under the majority view, reasonable reliance upon a decision of a lower court is likewise a defense. Thus, if the lower court has found a repealer statute constitutional, has declared the relevant criminal statute unconstitutional, or has enjoined enforcement of the statute, there may be a basis for reasonable reliance. However, in the case of lower court decisions there is more likely to arise a question of whether the reliance is reasonable. It has been suggested, for example, that reliance should not be a defense when it was known that the decision of the lower court was on appeal. [Footnotes omitted.]

We note also that the Model Penal Code provides for mistake of law as an affirmative defense. Section 2.04(3) of the Model Penal Code provides in part:

> (3) a belief that conduct does not legally constitute an offense is a defense to a prosecution for that offense based upon such conduct when:
>
> . . . .
>
> (b) he acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in (i) a statute or other enactment; (ii) a judicial decision, opinion or judgment; (iii) an administrative order or grant of permission; or (iv) an official interpretation of the public officer or body charged by law with responsibility for the interpretation, administration or enforcement of the law defining the offense.

Model Penal Code § 2.04(3) (Proposed Official Draft 1962).

There is little state law to guide us in defining when mistake of law is a defense. Apparently the only Alaska appellate court decision concerning a mistake of law based upon reliance on a judicial decision is *Cleveland v. Anchorage*, 631 P.2d 1073, 1083 (Alaska 1981). In that case the supreme court held that as a matter of law it was unreasonable for the defendants to rely on trial court decisions from another state to justify their conduct. *Cleveland* does not appear to be helpful in resolving the issue before us in this case.

We note that the revised criminal code, which appears to attempt to codify defenses to criminal acts, does not provide for a defense of mistake of law. AS 11.81.620(a) provides:

> (a) Knowledge, recklessness, or criminal negligence as to whether conduct constitutes an offense, or knowledge, recklessness, or criminal negligence as to the existence, meaning, or application of the provision of law defining an offense, is not an element of an offense unless the provision of law clearly so provides. Use of the phrase "intent to commit a crime", "intent to promote or facilitate the commission of a crime", or like terminology in a provision of law does not require that the defendant act with a culpable mental state as to the criminality of the conduct that is the object of the defendant's intent.

The commentary to the code indicates that this section is intended to codify "the universal principal that ordinarily ignorance of the law is not a defense." In tracing AS 11.81.620(a) to the tentative draft of the Alaska Criminal Code prepared by the Alaska Code Revision Commission, Subcommission on Criminal Law, we discover that AS 11.81.620(a) is derived from Oregon Revised Statutes § 161.115(4) and that AS 11.81.620(b) is derived from New York Penal Law § 15.20(1). New York Penal Law § 15.20 provides for a defense of reasonable mistake of law.[1] Therefore, it ap-

---

1. N.Y.Penal Law § 15.20(2) (McKinney 1975) provides:

pears probable that the drafters of the revised criminal code were aware of the New York provision and did not include it in the revised criminal code. This could mean that the legislature did not intend to allow a mistake of law defense in the revised code. It could also mean that the legislature overlooked the provision or wanted to leave the defense of mistake of law for later court determination. Since the commentary is silent, it is difficult for us to ascertain the legislative intent.

Furthermore, even if we were to conclude that the legislature rejected a defense of reasonable mistake of law in the revised code, that would not mean that the legislature intended that rejection to apply to fish and game offenses. AS 11.81.620(a) only applies to those offenses set forth in Title 11. *See* AS 11.81.640.

The state concedes that "most courts and commentators recognize that a person should be able to rely upon a judicial decision, even if that decision is later overruled." However, the state argues that we should hold that the defense of reasonable reliance on a court decision should be limited to decisions by the state appellate courts or the United States Supreme Court. *See State v. Striggles,* 202 Iowa 1318, 210 N.W. 137, 138 (1926).

■■■ In the absence of any statutory or case law establishing or rejecting such a defense, we conclude that a concern for due process of law requires us to establish at least a limited defense. Fish and game laws regulate legitimate activity. Violations of those regulations are *malum prohibitum,* not *malum in se.* As the court stated in *Kratz v. Kratz,* 477 F.Supp. 463, 481 (E.D.Pa.1979):

It would be an act of "intolerable injustice" to hold criminally liable a person who had engaged in certain conduct in

reasonable reliance upon a judicial opinion instructing that such conduct is legal. Indeed, the reliance defense is required by the constitutional guarantee of due process as illuminated by the Supreme Court in *Marks v. United States,* 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977), *Cox v. Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965) and *Raley v. Ohio,* 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959). [Footnotes omitted.]

■■■ However, we believe that the defense of reasonable mistake of law must be a limited defense in light of the fact that the general rule of law is that mistake of law is not a defense. The policy behind this rule is to encourage people to learn and know the law; a contrary rule would reward intentional ignorance of the law. The traditional rule of law that mistake of law is not a defense is based upon the fear "that its absence would encourage and reward public ignorance of the law to the detriment of our organized legal system, and would encourage universal pleas of ignorance of the law that would constantly pose confusing and, to a great extent, insolvable issues of fact to juries and judges, thereby bogging down our adjudicative system." *United States v. Barker,* 546 F.2d 940, 954 (D.C.Cir.1976) (Merhige, District J., concurring).

Model Penal Code § 2.04(4) (Proposed Official Draft 1962) provides:

(4) The defendant must prove a defense arising under Subsection (3) [quoted above] of this Section by a preponderance of evidence.

An earlier version of this subsection contained similar language but added:

The reasonableness of the belief claimed to constitute the defense shall be determined as a question of law by the Court.

A person is not relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief that it does not, as a matter of law, constitute an offense, unless such mistaken belief is founded upon an official statement of the law contained in (a) a statute or other enactment, or (b) an administrative order or grant of permission,

or (c) a judicial decision of a state or federal court, or (d) an interpretation of the statute or law relating to the offense, officially made or issued by a public servant, agency or body legally charged or empowered with the responsibility or privilege of administering, enforcing or interpreting such statute or law.

§ 2.04(4) (Tentative Draft No. 4, 1955). We believe that the 1955 Tentative Draft provision sets forth a reasonable procedure for a trial court to follow in deciding whether a defense of mistake of law has been established.

▮▮▮ We hold that a defense of mistake of law is an affirmative defense which the defendant must prove to the court by a preponderance of the evidence. We believe that this procedure will allow a defendant in a criminal case to obtain relief in cases where it would be unfair to hold him to knowledge of the law. Making the defense an affirmative defense argued to the court should protect against abuses of the defense and should ultimately make the law in this area more uniform as judges make decisions concerning what is a reasonable mistake of law. The determination of whether the defense applies requires a legal, technical application of due process considerations, a task within the judicial function. This determination will often depend on an understanding of the legal precedential value of decisions of courts at various levels, and of the appeals process. There is great potential for confusion and distraction if the jury were required, for instance, to determine whether it was reasonable to rely on a superior court decision reversing a district court decision (but in accord with the decisions of another district judge) which is being appealed to the supreme court.

▮▮▮ The state would have us rule as a matter of law that it was unreasonable for Ostrosky to rely on Judge Carlson's decision that the Limited Entry Act was unconstitutional. The state argues that since the decision was a trial court decision it was not binding on other courts and, since the decision was on appeal, Ostrosky should have been aware that the decision could be reversed. There is support in the cases and commentary on this issue which suggests that normally it might be unreasonable to rely on a decision of a trial court which is on appeal. *See* W. LaFave and A. Scott, *Criminal Law* § 47, at 367 (1972). However, the question of whether a person's reliance on a lower court decision is reasonable or not is in the first instance a question for the trial court. *See id.; Kratz v. Kratz,* 477 F.Supp. at 481 n. 47 (E.D.Pa. 1979). We are not prepared to rule, as a matter of law, that in every case it would be unreasonable to rely on a lower court decision which is on appeal.

▮▮▮ We note that in this case Ostrosky does not just represent that he relied on the ruling of the superior court. The court ruling involved was a case in which Ostrosky was a party. He also claims that his attorney assured him that the decision meant that he could fish.[2] When Ostrosky started fishing, Trooper Folger did not cite him or warn him not to fish. Furthermore, the papers filed with the courts by the Department of Law in July of 1983, taken on their face, indicate that the Department of Law was operating under the assumption that it needed to stay Judge Carlson's decision in order to enforce the Limited Entry Act.[3] If we look at these factors alone, in the light most favorable to Ostrosky, it appears that he has a sufficient claim of reasonable mistake of law to at least allow him to have a hearing on this issue. We therefore remand the case to allow Ostrosky to develop his defense of reasonable mistake of law at a hearing. We direct the superior court to make find-

---

**2.** The drafters of the Model Penal Code did not provide for a mistake of law defense based solely upon the advice of an attorney, and we are not today recognizing such a defense. *See* W. LaFave and A. Scott, *supra,* at 368–69. We hold only that when a defendant is seeking to establish the defense of reasonable reliance on a judicial decision, the fact that he consulted an attorney and was told that the decision meant he could embark on a contemplated course of conduct is probative evidence of the reasonableness of the reliance.

**3.** The record does not reflect whether the issue of the constitutionality of the Limited Entry Act had been decided by any other courts in the state. If other courts, particularly the superior courts, had held the Limited Entry Act constitutional, this would tend to undermine Ostrosky's defense of reasonable reliance, particularly if he was aware of those decisions.

ings of fact and conclusions of law following the hearing.[4]

The case is REMANDED.

BRYNER, C.J., dissents.

BRYNER, Chief Judge, dissenting.

Upon reflection, I am unable to agree with the majority's decision to create an affirmative defense of reasonable mistake of law. In light of the revised criminal code's treatment of defenses and affirmative defenses, AS 11.81.300–.640, and in light of the express provisions of AS 11.81.-620(a) and the legislative history of that statutory provision I think it reasonably clear that the legislature rejected mistake of law as a defense to criminal responsibility. The majority's decision to create such a defense is therefore unsound.[1]

**4.** Ostrosky has argued other issues in this appeal. He argues that the Limited Entry Act is unconstitutional. This contention is controlled by *State v. Ostrosky*, 667 P.2d 1184 (Alaska 1983), *appeal dismissed*, —— U.S. ——, 104 S.Ct. 2379, 81 L.Ed.2d 339, *reh'g denied*, —— U.S. ——, 104 S.Ct. 3572, 82 L.Ed.2d 871 (1984). Ostrosky also contends that because he was a party in the case where Judge Carlson declared the Limited Entry Act to be unconstitutional, he should be allowed to rely on that ruling until it was overturned even if it would be unreasonable for a non-party to rely on the lower court decision. We have not found any authority which indicates that Judge Carlson's decision would be binding on the parties until the decision was stayed or overturned but would not necessarily be binding on anyone else. We believe that the fact that Ostrosky was a party to the original decision is a matter which, along with other facts, should be weighed by the superior court to determine whether Ostrosky can show that he made a reasonable mistake of law.

Ostrosky also has appealed his sentence. We order the sentence vacated. In the event that the superior court rejects Ostrosky's defense of reasonable mistake of law, in passing sentence the superior court should consider whether Ostrosky intended to violate the law, the extent of his good faith, and the extent of the reasonableness of his belief that his actions were lawful. If Ostrosky did not intend to violate the law, that fact is a relevant consideration in sentencing. *See Nickolas v. State*, 689 P.2d 510 (Alaska App.1984).

**1.** In any event, if a reasonable mistake of law defense is to be created, I see no justification

Moreover, the defense created by the majority is unnecessary: it is a cumbersome and potentially confusing general rule adopted solely to dispose of the specific problem in this case. The problem is susceptible of a far more limited cure.

The crucial facts here are not disputed. Ostrosky challenged the constitutional validity of the limited entry permit system and won in the superior court. The state could have moved immediately for a stay pending appeal but did not. Having personally obtained a favorable judgment from a court of general jurisdiction in a case in which he was himself the plaintiff,[2] and no stay pending appeal having been sought by the state, Ostrosky resumed fishing. No prior Alaska judicial decision addressed the question whether, under the circumstances, Ostrosky was legally entitled to rely on the superior court's ruling.

whatsoever for taking the factual issues involved in that defense away from the jury. There is nothing in the Model Penal Code to suggest that the defense should not be decided by the jury. *See* A.L.I., Model Penal Code §§ 1.12, 2.04(3) and (4) (Proposed Official Draft 1962); *compare* Model Penal Code § 2.04(4) (Tentative Draft No. 4, 1955). Nor has the majority found any other jurisdiction permitting a defense of reasonable mistake of law to be raised but treating it as an issue exclusively for the court.

The reasonableness of a defendant's beliefs as to surrounding circumstances is a question resolved by juries in numerous and varied contexts. To suggest that the issue should be taken from the jury in this situation simply because it is potentially confusing betrays a profound mistrust of juries, which is both entirely unwarranted and fundamentally at odds with our traditional system of justice. *See, e.g., Baker v. Fairbanks*, 471 P.2d 386 (Alaska 1970). I perceive utterly no connection between the type of factual issues that the majority's opinion in this case would remove from the jury's consideration and the type of extrinsic policy considerations involved in the entrapment defense. *See, e.g., Grossman v. State*, 457 P.2d 226 (Alaska 1969).

**2.** An integral part of my conclusion that this case can be resolved as *sui generis* is that Ostrosky was a party in the litigation in which the judgment he relied on was rendered. I do not mean to suggest that, in the absence of a reasonable mistake of law defense, other individuals, who were not parties to Ostrosky's action, would be on similar footing.

It seems clear from the record that the Office of the Attorney General initially believed Ostrosky was entitled to fish unless a stay was issued. The state so represented in the motion for a stay that it filed with the supreme court after realizing that Ostrosky had resumed fishing. Similarly, the supreme court justice who granted the state's motion for a stay apparently believed a stay was necessary to prevent Ostrosky from relying on the superior court ruling. To hold that Ostrosky could subsequently be prosecuted for sharing this same view seems, under the circumstances, preposterous. I would, accordingly, simply hold that in the peculiar factual setting of this case, it would be fundamentally unfair, and violative of the Alaska Constitution's guarantee of due process,[3] to permit Ostrosky to be convicted for a limited entry violation committed after the superior court's ruling but before issuance of the stay pending appeal.

Since I believe Ostrosky's conviction must be reversed and the prosecution dismissed as a matter of law, I dissent.